AF Approval *Defson*                                           Chief Approval _____

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA

     v.                                        CASE NO. 8:20-cr-30-CEH-TGW

CARLOS MARTINEZ

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Karin Hoppmann, Acting United States Attorney for the Middle District of Florida, and the defendant, Carlos Martinez, and the attorney for the defendant, Vanessa Albaum, mutually agree as follows:

### A.   **Particularized Terms**

1.   <u>Count Pleading To</u>

The defendant shall enter a plea of guilty to Count One of the Indictment. Count One charges the defendant with knowingly and willfully conspiring with others to possess with intent to distribute and to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii) and (b)(1)(C).

Defendant's Initials CM

2.    <u>Minimum and Maximum Penalties</u>

Count One is punishable by a mandatory minimum term of imprisonment of 10 years up to life, a fine not to exceed $5,000,000, a term of supervised release of at least 5 years up to life, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.    <u>Alleyne v. United States and Apprendi v. New Jersey</u>

Under *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the defendant is subject to a mandatory minimum sentence of ten years' imprisonment as to Count One, and under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court may impose a maximum sentence of life imprisonment as to Count One because the following facts have been admitted by the defendant and are established by this plea of guilty: the defendant conspired to possess with intent to distribute or distributed 50 grams or more of methamphetamine.

4.    <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

Defendant's Initials *CM*

First:      Two or more people in some way agreed to try to accomplish a shared and unlawful plan;

Second:     The Defendant knew the unlawful purpose of the plan and willfully joined in it; and

Third:      The object of the unlawful purpose of the plan was to distribute and possess with the intent to distribute 50 grams or more of methamphetamine.

5.   No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.   Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

Defendant's Initials _CM_

7. <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8. <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution

Defendant's Initials _CM_

4

for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _CM_

5

9.   Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

10.   Cooperation - Responsibilities of Parties

a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

Defendant's Initials _CM_

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by decision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this

Defendant's Initials _CM_

agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

        (4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

        (5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

11.    Forfeiture of Assets

        The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, whether in the possession or control of the United States, the defendant or defendant's nominees.

        The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds,

Defendant's Initials _CM_

8

including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8

Defendant's Initials _CM_

will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding

Defendant's Initials  _CM_

upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

**B.**     **Standard Terms and Conditions**

    1.     Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100.00, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

Defendant's Initials _CM_

11

The defendant understands that this agreement imposes no limitation as to fine.

2.   Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.   Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.   Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials _CM_

12

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

Defendant's Initials  CM

13

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the

Defendant's Initials _CM_

14

defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the

Defendant's Initials _CM_

15

concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials  _CM_

16

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

Beginning on an unknown date, but not later than on or about January 1, 2018, and continuing through on or about April 23, 2019, a drug trafficking organization (DTO) distributed hundreds of kilograms of methamphetamine, as well as a smaller amount of cocaine, within the Middle District of Florida.

- A Mexican drug cartel supplied the DTO, which was led in Florida by co-conspirator #1 (CC-1) and co-conspirator #2 (CC-2).

- A network of co-conspirators, including defendant Olga JACKSON, transported the narcotics from Mexico to CC-1 and CC-2 in Spring Hill, Florida.

- A network of co-conspirators, including defendants Edwar RODRIGUEZ, Christian SANTIAGO RONDON, and Victor SANTIAGO RONDON, distributed the narcotics to the DTO's customers in Florida, collected money from those customers, and wired money to the DTO's contacts in Mexico.

Defendant's Initials _CM_

17

- The DTO's biggest customers included co-defendants Jorge RAMIREZ and Carlos MARTINEZ, who were each kilogram quantity distributors themselves.

In January 2018, confidential sources informed law enforcement officers that CC-1 was distributing kilogram quantities of methamphetamine in the Middle District of Florida to a network of drug dealers. Law enforcement officers surveilled CC-1 from October 2018 through April 2019. During this time, through observation of their routines and practices, officers identified CC-2 as CC-1's partner, and officers identified RODRIGUEZ, C. SANTIAGO RONDON, and V. SANTIAGO RONDON as CC-1 and CC-2's deputies or assistants. They also identified two residences used as stash houses by CC-1, CC-2, RODRIGUEZ, C. SANTIAGO RONDON, and V. SANTIAGO RONDON.

In mid-April 2019, law enforcement officers obtained authorization from a federal magistrate judge to search the stash house located at 11283 Elgin Boulevard, Spring Hill, FL 34608. Law enforcement officers did not execute the warrant immediately upon receiving authorization, however; instead, they waited for indicia of a narcotics delivery.

On April 23, 2019, officers observed such indicia. Specifically, they observed CC-1 and CC-2 move their truck out of the garage and leave it parked in front of the house while they left the house, which was suspicious because CC-1 and CC-2 usually took great care to keep the truck inside the garage, and out of sight, when they, RODRIGUEZ, C. SANTIAGO RONDON, or V. SANTIAGO

Defendant's Initials _CM_

RONDON were not driving it. Unindicted co-conspirator #3 (CC-3) drove CC-1 and CC-2 to a nearby Walmart, where they met up with defendant Olga JACKSON. JACKSON gave CC-1 and CC-2 her Audi sedan, which they immediately drove back to the Elgin Boulevard stash house and parked in the garage, out of sight. Meanwhile, JACKSON waited at the Walmart. A few hours later, CC-1 and CC-2 brought JACKSON's car back to her at the Walmart. CC-3, who had followed CC-1 and CC-2 in a separate vehicle, then drove CC-1 and CC-2 back to the Elgin Boulevard stash house.

Soon after JACKSON drove away from the Walmart, law enforcement officers executed a traffic stop on her vehicle. A certified police narcotics-detecting dog performed an exterior search of the vehicle and alerted to the odor of narcotics emanating from the vehicle. Law enforcement officers searched the vehicle. Although they did not find narcotics, they did find a light bulb box on the backseat that contained $12,000 – twelve bundles of $1,000 each, secured by rubber bands.

Law enforcement officers then executed the search warrant at the Elgin Boulevard stash house. Inside, they found both CC-1 and CC-2 present. They also found the following contraband:

- 29.5 pounds (over 13 kilograms) of liquid methamphetamine;
- 403 grams of powdered methamphetamine;
- 167 grams of cocaine;
- 4 grams of heroin;
- 2 handguns;
- 87 rounds of assorted caliber ammunition; and
- approximately $11,083.

Defendant's Initials _CM_

19

JACKSON transported the 29.5 pounds (over 13 kilograms) of liquid methamphetamine from Michoacan, Mexico to Spring Hill, Florida by concealing it in the spare tire of her Audi sedan, which she drove across the Mexico-United States border and directly to Spring Hill, where she rendezvoused with CC-1 and CC-2, in exchange for the $12,000 found in her car. The DTO members intended to work together to distribute all of the narcotics found during the search.

Over the previous year and a half, RODRIGUEZ, C. SANTIAGO RONDON, and V. SANTIAGO RONDON delivered more than 200 kilograms of methamphetamine to the DTO's customers, including RAMIREZ and MARTINEZ, and collected payments from those customers on behalf of CC-1 and CC-2.

Defendants RAMIREZ and MARTINEZ expected to receive kilogram or multi-kilogram portions of the methamphetamine supply that JACKSON delivered on April 23, 2019, which RAMIREZ and MARTINEZ intended to further distribute, just as they had at least monthly for more than a year. Using a single date as a representative example, CC-1 and CC-2's records show that on February 4, 2019, they provided one kilogram of methamphetamine to MARTINEZ and 1.5 kilograms of methamphetamine to RAMIREZ for resale.

MARTINEZ sometimes transported narcotics for CC-1 and CC-2 in addition to selling their product. For example, in April 2017, CC-1 and MARTINEZ jointly delivered nine kilograms of methamphetamine to co-conspirator #4 (CC-4), one of

Defendant's Initials _CM_

CC-1 and CC-2's largest customers.[1] Similarly, surveillance coupled with CC-1 and CC-2's records reveal that on March 6, 2019, MARTINEZ delivered ten kilograms of methamphetamine and one kilogram of cocaine to CC-1 and CC-2. MARTINEZ had picked up the narcotics in Texas and then drove them to Spring Hill, Florida.

The above is merely a brief summary of the events, some of the persons involved, and other information relating to this case.  It does not include, nor is it intended to include, all of the events, persons involved, or other information relating to this case.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

---

[1] CC-4 was arrested in October 2018. In the year before his arrest, CC-4 received 193.5 kilograms of methamphetamine from CC-1 and CC-2's DTO.

Defendant's Initials _CM_

21

13.     Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _14th_ day of _____April_____, 2021.

KARIN HOPPMANN
Acting United States Attorney

_____
Carlos Martinez
Defendant

_____
Michael M. Gordon
Assistant United States Attorney

_____
Vanessa Albaum King
Attorney for Defendant

_____
James C. Preston, Jr.
Assistant United States Attorney
Deputy Chief, Violent Crimes and
Narcotics Section

22

<u>**Individual Declaration as to Payment of**</u>
<u>**Special Assessment Upon Conviction**</u>

I, Carlos Martinez, a defendant in Case No. 8:20-cr-30-CEH-TGW, hereby acknowledge that, in accordance with 18 U.S.C. § 3013(a), upon sentencing I will owe the following amount:

**For Felony Offenses Committed before April 24, 1996:**
Felony count:        $50 x _____ counts = $_____
**For Felony Offenses Committed On or After April 24, 1996:**
Felony count:        $100 x _1_ counts = $_100____

**For Misdemeanors, Regardless of Date of Offense:**
Class A Misdemeanor count: $25 x _____ counts = $_____
Class B Misdemeanor count: $10 x _____ counts = $_____
Class C Misdemeanor count or infraction: $5 x _____ counts = $_____

**Total Special Assessment Due: $_____**

**Please check <u>one</u> of the following paragraphs and fill in the blanks as appropriate.**

_____ I hereby tender a cashier's check, certified check or money order made payable to the Clerk, United States District Court, in the amount of $_____.  Payment is for full or partial satisfaction of the special assessment imposed upon me and is being delivered to the Clerk's Office of the Tampa Division, with a copy of this document.
_____ I am temporarily unable to pay the special assessment but will pay the same in full on or before the date of sentencing by tendering a cashier's check, certified check or money order made payable to the Clerk, United States District Court, in the amount of $_____ and delivering it to the Clerk of Court of the Tampa Division, with a copy of this document.

✓ As reflected in the sworn financial statement submitted herewith, I am unable to pay the special assessment now and in the foreseeable future.

_4/14/21____                              _____
Date                                               Carlos Martinez